Rabin, J.
 

 In this action for breach of a publishing contract, we must decide what damages are recoverable for defendant’s failure to publish plaintiff’s manuscript. In 1965, plaintiff, an author and a college teacher, and defendant, Washington Square Press, Inc., entered into a written agreement which, in relevant part, provided as follows. Plaintiff (“ author ”) granted defendant
 
 (“
 
 publisher ”) exclusive rights to publish and sell in book form plaintiff’s work on modern drama. Upon plaintiff’s delivery of the manuscript, defendant agreed to complete payment of a nonreturnable $2,000 “ advance ”. Thereafter, if defendant deemed the manuscript not
 
 “
 
 suitable for publication ”, it had the right to terminate the agreement by written notice within 60 days of delivery. Unless so terminated, defendant agreed to publish the work in hardbound edition within 18
 
 *381
 
 months and afterwards in paperbound edition. The contract further provided that defendant would pay royalties to plaintiff, based upon specified percentages of sales. (For example, plaintiff was to receive 10% of the retail price of the first 10,000 copies sold in the continental United States.) If defendant failed to publish within 18 months, the contract provided that ‘ ‘ this agreement shall terminate and the rights herein granted to the Publisher shall revert to the Author. In such event all payments theretofore made to the Author shall belong to the Author without prejudice to any other remedies which the Author may have.” The contract also provided that controversies were to be determined pursuant to the New York simplified procedure for court determination of disputes (CPLR 3031-3037).
 

 Plaintiff performed by delivering his manuscript to defendant and was paid his $2,000 advance. Defendant thereafter merged with another publisher and ceased publishing in hardbound. Although defendant did not exercise its 60-day right to terminate, it has refused to publish the manuscript in any form.
 

 Plaintiff commenced the instant action pursuant to the simplified procedure practice and initially sought specific performance of the contract. The Trial Term Justice denied specific performance but, finding a valid contract and a breach by defendant, set the matter down for trial on the issue of monetary damages, if any, sustained by the plaintiff. At trial, plaintiff sought to prove: (1) delay of his academic promotion; (2) loss of royalties which would have been earned; and (3) the cost of publication if plaintiff had made his own arrangements to publish. The trial court found that plaintiff had been promoted despite defendant’s failure to publish, and that there was no evidence that the breach had caused any delay. Recovery of lost royalties was denied without discussion. The court found, however, that the cost of hardcover publication to plaintiff was the natural and probable consequence of the breach and, based upon expert testimony, awarded $10,000 to cover this cost. It denied recovery of the expenses of paperbound publication on the ground that plaintiff’s proof was conjectural.
 

 The Appellate Division, (3 to 2) affirmed, finding that the cost of publication was the proper measure of damages. In support of its conclusion, the majority analogized to the construction
 
 *382
 
 contract situation where the cost of completion may be the proper measure of damages for a builder’s failure to complete a house or for use of wrong materials. The dissent concluded that the cost of publication is not an appropriate measure of damages and consequently, that plaintiff may recover nominal damages only.
 
 *
 
 We agree with the dissent. In so concluding, we look to the basic purpose of damage recovery and the nature and effect of the parties’ contract.
 

 It is axiomatic that, except where punitive damages are allowable, the law awards damages for breach of contract to compensate for injury caused by the breach — injury which was foreseeable, i.e., reasonably within the contemplation of the parties, at the time the contract was entered into.
 
 (Swain
 
 v.
 
 Schieffelin,
 
 134 N. Y. 471, 473.) Money damages are substitutional relief designed in theory “ to put the injured party in as good a position as he would have been put by full performance of the contract, at the least cost to the defendant and without charging him with harms that he had no sufficient reason to foresee when he made the contract.” (5 Corbin, Contracts, § 1002, pp. 31-32; 11 Williston, Contracts [3d ed.], § 1338, p. 198.) In other words, so far as possible, the law attempts to secure to the injured party the benefit of his bargain, subject to the limitations that the injury — whether it be losses suffered or gains prevented — was foreseeable, and that the amount of damages claimed be measurable with a reasonable degree of certainty and, of course, adequately proven. (See, generally, Dobbs, Law of Remedies, p. 148; see, also, Farnsworth, Legal Remedies for Breach of Contract, 70 Col. L. Rev. 1145, 1159.) But it is equally fundamental that the injured party should not recover more from the breach than he would have gained had the contract been fully performed.
 
 (Baker
 
 v.
 
 Drake,
 
 53 N. Y. 211, 217; see, generally, Dobbs, Law of Remedies, p. 810.)
 

 Measurement of damages in this case according to the cost of publication to the plaintiff would confer greater advantage than performance of the contract would have entailed to plaintiff and would place him in a far better position than he would have occupied had the defendant fully performed. Such mea
 
 *383
 
 surement bears no relation to compensation for plaintiff’s actual loss or anticipated profit. Far beyond compensating plaintiff for the interests he had in the defendant’s performance of the contract — whether restitution, reliance or expectation (see Fuller
 
 &
 
 Perdue, Reliance Interest in Contract Damages, 46 Yale L. J. 52, 53-56) an award of the cost of publication would enrich plaintiff at defendant’s expense.
 

 Pursuant to the contract, plaintiff delivered his manuscript to the defendant. In doing so, he conferred a value on the defendant which, upon defendant’s breach, was required to be restored to him. Special Term, in addition to ordering a trial on the issue of damages, ordered defendant to return the manuscript to plaintiff and plaintiff’s restitution interest in the contract was thereby protected. (Cf. 5 Corbin, Contracts, § 996, p. 15.)
 

 At the trial on the issue of damages, plaintiff alleged no reliance losses suffered in performing the contract or in making necessary preparations to perform. Had such losses, if foreseeable and ascertainable, been incurred, plaintiff would have been entitled to compensation for them. (Cf.
 
 Bernstein
 
 v.
 
 Meech,
 
 130 N. Y. 354, 359.)
 

 As for plaintiff’s expectation interest in the contract, it was basically two-fold — the “ advance ” and the royalties. (To be sure, plaintiff may have expected to enjoy whatever notoriety, prestige or other benefits that might have attended publication, but even if these expectations were compensable, plaintiff did not attempt at trial to place a monetary value on them.) There is no dispute that plaintiff’s expectancy in the “ advance ” was fulfilled — he has received his $2,000. His expectancy interest in the royalties — the profit he stood to gain from sale of the published book — while theoretically compensable, was speculative. Although this work is not plaintiff’s first, at trial he provided no stable foundation for a reasonable estimate of royalties he would have earned had defendant not breached its promise to publish. In these circumstances, his claim for royalties falls for uncertainty. (Cf.
 
 Broadway Photoplay Co.
 
 v.
 
 World Film Corp.,
 
 225 N. Y. 104;
 
 Hewlett
 
 v.
 
 Caplin,
 
 275 App. Div. 797.)
 

 Since the damages which would have compensated plaintiff for anticipated royalties were not proved with the required cer
 
 *384
 
 tainty, we agree with the dissent in the Appellate Division that nominal damages alone are recoverable. (Cf.
 
 Manhattan Sav. Inst.
 
 v.
 
 Gottfried Baking Co.,
 
 286 N. Y. 398.) Though these are damages in name only and not at all compensatory, they are nevertheless awarded as a formal vindication of plaintiff’s legal right to compensation which has not been given a sufficiently certain monetary valuation. (Cf.
 
 Baker
 
 v.
 
 Hart,
 
 123 N. Y. 470, 474; see, generally, Dobbs, Law of Remedies, p. 191; 11 Williston, Contracts [3d ed.], § 1339A, pp. 206-208.)
 

 In our view, the analogy by the majority in the Appellate Division to the construction contract situation was inapposite. In the typical construction contract, the owner agrees to pay money or other consideration to a builder and expects, under the contract, to receive a completed building in return. The value of the promised performance to the owner is the properly constructed building. In this case, unlike the typical construction contract, the value to plaintiff of the promised performance —'publication — was a percentage of sales of the books published and not the books themselves. Had the plaintiff contracted for the printing, binding and delivery of a number of hardbound copies of his manuscript, to be sold or disposed of as he wished, then perhaps the construction analogy, and measurement of damages by the cost of replacement or completion, would have some application.
 

 Here, however, the specific value to plaintiff of the promised publication was the royalties he stood to receive from defendant’s sales of the published book. Essentially, publication represented what it would have cost the defendant to confer that value upon the plaintiff, and, by its breach, defendant saved that cost. The error by the courts below was in measuring damages not by the value to plaintiff of the promised performance but by the cost of that performance to defendant. Damages are not measured, however, by what the defaulting party saved by the breach, but by the natural and probable consequences of the breach
 
 to the plaintiff.
 
 In this case, the consequence to plaintiff of defendant’s failure to publish is that he is prevented from realizing the gains promised by the contract — the royalties. But, as we have stated, the amount of royalties plaintiff would have realized was not ascertained with adequate cer
 
 *385
 
 tainty and, as a consequence, plaintiff may recover nominal damages only.
 

 Accordingly, the order of the Appellate Division should be modified to the extent of reducing the damage award of $10,000 for the cost oí publication to six cents, but with costs and disbursements to the plaintiff.
 

 Chief Judge Breitel and Judges Jasen, Gabrielli, Jones and Wachtler concur; Judge Stevens taking no part.
 

 Order modified, with costs and disbursements to plaintiff-respondent, in accordance with opinion herein and, as so modified, affirmed.
 

 *
 

 Plaintiff does not challenge the trial court’s denial of damages for delay in promotion or for anticipated royalties.